UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  22-20079-CR-MORENO/GOODMAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MARIO TOVAR,
GERALDO RODRIGUEZ, and
LUIS ALFONSO NUÑEZ,

      Defendants.

_____/

## JOINT MOTION TO DISMISS INDICTMENT

Mario Tovar, Geraldo Rodriguez and Luis Alfonso Nunez, by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b), respectfully moves this Honorable Court to dismiss the indictment for lack of subject matter jurisdiction and personal jurisdiction, unconstitutionality of the statute as applied, and unreasonable delay in presentment. In support thereof, the defendants state the following:

### Procedural History

1.    According to the allegations in the criminal complaint, the defendants were arrested on February 5, 2022, in a vessel in the

Caribbean Sea, approximately 183 nautical miles north of La Guajira, Colombia. (D.E. 1, ¶ 3–4).

2.     At the time law enforcement boarded the vessel, one of the people on board identified himself as the master of the vessel and made a claim of Colombian nationality for the vessel. *Id.*

3.     The arrest was conducted by a team composed of members of the United States Coast Guard. *Id.*

4.     According to the complaint, the defendants were subsequently detained on board the US Coast Guard Cutter Confidence. (*Id.* at ¶ 5). Documents in the discovery indicate that the defendants were ultimately transported to the Southern District of Florida.

5.     For reasons not yet established in the record, the journey took approximately 11 days. (*See id.*).

6.     The criminal complaint was filed on February 16, 2022—11 days after the Defendants had first been arrested and held prisoner— charging the defendants with conspiracy to possess with the intent to distribute at least five kilograms of cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§

70503(a)(1) & 70506(b), also known as the Maritime Drug Law Enforcement Act or MDLEA. (D.E. 1).

7.    The defendants made their initial appearance in the Southern District of Florida on February 18, 2022. (D.E. 3-5).

8.    An indictment was returned on March 2, 2022, charging the defendants with one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) & 70506(b), and one count of possessing with intent to distribute at least five kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1). (D.E. 8).

9.    The defendants now move this Honorable Court to dismiss the indictment based on a lack of subject matter jurisdiction and the unconstitutionality of the MDLEA on its face, as it concerns the definition of "stateless" vessels in 46 U.S.C. § 70502(d)(1)(C) (Issue I).

10.   It is well-established that Congress's authority to prosecute offenses under the MDLEA rests solely on its power under Art. I § 8, cl. 10 of the U.S. Constitution to "define and punish ... Felonies committed

3

on the high Seas" (the "Felonies Clause").  *See United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012).

11.    As recently explained by the First Circuit in *United States v. Davila-Reyes*, __ F.4th __, 2022 WL 178854 (1st Cir. 2022) (attached as Exhibit 1), Congress' authority under the "Felonies Clause" is inherently limited by customary international law.  As found by the court therein, the MDLEA clause which defines "stateless" vessels, 46 U.S.C. § 70502(d)(1)(C), is facially unconstitutional because it plainly applies to vessels that are not "stateless" under customary international law and thus purports to extend Congress' authority beyond that contained in the Felonies Clause. (Issue I).

12.    The MDLEA is also unconstitutional as applied on these facts because the defendants were arrested in the Exclusive Economic Zone (EEZ) of Colombia, which is not part of the "high Seas," as defined by customary international law. (Issue II).  This offense therefore falls outside of Congress's authority under the Felonies Clause and the indictment must be dismissed.

13.    Finally, the defendants move to dismiss the indictment as a sanction for the government's unlawful, unreasonable, and "outrageous"

conduct in detaining him for an extended period of time without charges being filed or presenting him to a magistrate judge, such that the defendants were held prisoner in the absence of any judicial oversight for approximately 11 days. (Issue III).

14.    The defendants respectfully request an evidentiary hearing as it is necessary, at a minimum, to establish the government's reasons for the delay.

## MEMORANDUM OF LAW

**I.    The MDLEA's definition of a "stateless" vessel is facially unconstitutional, because it applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under the "Felonies Clause."**

In *United States v. Davila-Reyes*, __ F.4th __, 2022 WL 178854 (1st Cir. Jan. 20, 2022), the First Circuit held that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional because it plainly applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under Article I, Section 8, Clause 10 (the Felonies Clause). Because the government relies on the same unconstitutional provision of the MDLEA to establish statutory jurisdiction here, (*see* DE 1:5;  DE  35:2–3),  the  Court  lacks  constitutional  subject  matter

jurisdiction, and the indictment against the defendants must be dismissed. [1]

The Defendants are charged with conspiracy to possess with intent to distribute, and possessing with intent to distribute, cocaine on board a "vessel subject to the jurisdiction of the United States," in violation of 46 U.S.C. § 70503(a)(1) and 70506(b). (*See* D.E. 8). The phrase "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A). The MDLEA defines "vessel without nationality" to include, as relevant here, any vessel "aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C).[2] When it enacted this provision of the MDLEA, Congress exceeded the authority granted to it by the Felonies Clause because § 70502(d)(1)(C) plainly applies to individuals on vessels that are *not*

---

[1] As discussed more fully below, this is a question of first impression before this Court. The Eleventh Circuit has never addressed whether Congress' Article I powers under the Felonies Clause are limited, as the First Circuit found in *Davila-Reyes*, by customary international law.

[2] Section 70502(d)(1)(A) & (B) provide that a vessel is without nationality if: the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claim; or the master or individual in charge fails, on request, to make a claim of nationality or registry. Those provisions are not at issue here.

considered stateless under customary international law. *See Davila-Reyes*, 2022 WL 178854, at *31.

A. <u>Congress's power to prosecute "Felonies on the high Seas" is limited by customary international law.</u>

Congress enacted the relevant portions of the MDLEA solely pursuant to its enumerated grant of authority to "define and punish . . . Felonies committed on the high Seas" (*i.e.* the "Felonies Clause" of U.S. CONST. art. I, § 8, cl. 10).[3] *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012) (holding that Congress could not proscribe drug trafficking under the Offences Clause of Article I, Section 8, Clause 10, because it is not an offense against the Law of Nations); *United States v. Davila-Mendoza*, 972 F.3d 1264 (11th Cir. 2020) (holding that Congress lacked the power to enact the MDLEA pursuant to the Foreign Commerce Clause and rejecting the government's alternative argument that the statute was passed as a necessary and proper exercise of the Treaty power); *see also United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016); *Davila-Reyes*, 2022 WL 178854, at *11.

---

[3] The defendants refer to the entirety of Article I, Section 8, Clause 10 as the "Define and Punish Clause" and the portion of the Define and Punish Clause that authorizes Congress to "define and punish . . .   Felonies committed on the high Seas" as the Felonies Clause.

Furthermore, the Framers incorporated customary international law as a limit on Congress's authority under the Felonies Clause. *See Bellaizac-Hurtado*, 700 F.3d at 1248–49. In *Davila-Reyes*, the First Circuit undertook an exceptionally thorough and persuasive review of the historical record (including the Framers' own statements) and legal precedent, which confirmed the same. *See Davila-Reyes*, 2022 WL 178854. at \*14–24. As a general matter, the Framers were deeply committed to international law and saw, as their "primary goal," "improving the new nation's ability to meet its obligations to other countries under international law." *Id.* at \*15; *see also id.* at \*16 (explaining that, for both pragmatic and ideological reasons, "as they embarked on drafting a constitution, the Framers saw a federal system capable of upholding international law as an imperative for the United States to achieve equal status in the community of nations."). Consistent with these goals and concerns, "the Framers viewed international law as a restraint on Congress's enumerated powers bearing on foreign relations." *Id.* at \*16.

This is particularly evident in Article I, Section 8, Clause 10 (the Define and Punish Clause). The Define and Punish Clause is made up of

phrases borrowed from international law; "Offences against the Law of Nations," "Piracies," and "Felonies" are "all concepts taken directly from international law." *Id.* These phrases were "familiar shorthand" for "international law concepts" and their inclusion in the Constitution is "strong evidence that the Framers intended the Define and Punish clause to align with the international law understanding of those concepts." *Id.*

The Framers' decision to treat "Piracies" and "Felonies" distinctly within the Define and Punish Clause is also significant. At the time, and consistent with international law, piracy was understood to be a crime of universal jurisdiction, meaning that it could be punished by any country no matter where it was committed or by whom. *Id.* at *18–19. Felonies, *i.e.,* serious crimes other than piracy, were not—even if committed on the high seas. "It was a well-accepted principle of international law that countries could enact statutes criminalizing conduct on the high seas other than piracy, *but only* as to a given country's own nationals or *on vessels over which the country could exercise jurisdiction pursuant to international law*." *Id.* at 19 (emphases added) (citing numerous primary and secondary sources). Thus, by separating "Piracies" and "Felonies" in the Define and Punish Clause, the Framers "manifest[ed] an intent to

distinguish between crimes with different jurisdictional limits under international law: classic piracy, which can be punished no matter where committed or by whom, and Felonies, which can be punished only if committed by U.S. nationals or on vessels subject to U.S. jurisdiction under international law" while on the high seas. *Id.* (footnote omitted); *see also United States v. Palmer*, 16 U.S. (3 Wheat.) 610, 630–34 (1818) (holding that Congress could not extend U.S. jurisdiction to foreigners on foreign vessels for the common law form of robbery); *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 197–98 (1820) (holding the same for murder on a foreign vessel, and again contrasting piracy, which can be punished by Congress "even when committed by a foreigner upon a foreigner in a foreign ship").

In sum: Congress' authority to "define and punish . . . Felonies committed on the high Seas" goes only as far as international law permits. International law prohibits "any country from asserting jurisdiction over foreign vessels on the high seas[.]" *Davila-Reyes*, 2022 WL 178854, at *20 (citation and internal quotation marks omitted). Thus, the United States can only exercise jurisdiction over vessels on the high

seas that are considered stateless (*i.e.* without nationality) *under international law. Id.* Put differently:

> there can be no doubt that the Constitution's drafters intended that Congress's authority under [the Felonies Clause] be constrained by currently applicable international law whenever Congress invokes that Clause to assert its authority over foreign nationals and their vessels on the high seas. . . . [T]hat constraint [necessarily] applies when Congress passes legislation deeming vessels on the high seas stateless. . . . It therefore follows that the Felonies Clause requires Congress to abide by international law principles in defining statelessness.

*Id.* at *22.

B. <u>Section 40502(d)(1)(C) purports to extend Congress'
power beyond that granted in the Felonies Clause.</u>

Customary international law considers as stateless a vessel that has not been granted nationality by any country. *See id.* at *22. A vessel may be deemed stateless under international law if it has never been granted nationality by any state, has had its nationality/authorization cancelled, refuses to claim any nationality, or claims more than one nationality. *See id.* at 22–23. A verbal claim of nationality by the master or individual in charge constitutes prima facie proof of the vessel's nationality. *Id.* at *24; *see also United States v. Obando*, 891 F.3d 929, 939 (11th Cir. 2018) (Black, J. concurring).

11

Section 70502(d)(1)(C) allows the United States to deem vessels stateless (*i.e.* without nationality) when they would not be deemed stateless under international law, namely, when the master or individual in charge makes a claim of nationality, which is neither confirmed nor denied by the identified nation. In other words, "§ 70502(d)(1)(C) displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry"—a method recognized by both the MDLEA and international law—"without any affirmative evidence to the contrary." *Davila-Reyes*, 2022 WL 178854, at *24 (citations omitted).

Because the MDLEA treats as stateless a vessel that, under international law, would be a vessel with nationality, "the prosecution of foreign nationals traveling on such a vessel for a violation of U.S. law is impermissible under the Felonies Clause of the Constitution, the only source of authority for Congress's adoption of the MDLEA*." Id.* at *31. And because this "constitutional flaw" is "evident in the statutory terms themselves," § 70502(d)(1)(C) is facially unconstitutional. *Id.* at *30 n.61 (explicitly holding that the entire provision is facially unconstitutional and rejecting the government's characterization of the appellants' challenge as an "as-applied" challenge).

As the *Davila-Reyes* Court explained, this issue was one of "first impression for the federal courts." *Id.* at *14. The Eleventh Circuit has never addressed this issue.

In *United States v. Lopez Hernandez*, the Eleventh Circuit was tasked with determining whether the government had established *statutory* jurisdiction under § 70502(d)(1)(C) where the vessel at issue was, in fact, registered in Guatemala, but—when contacted—the government of Guatemala replied that it could neither confirm nor deny the claim of nationality. 864 F.3d 1292, 1297–99 (11th Cir. 2017). The *Lopez Hernandez* defendants argued on appeal that the government had not established that the vessel was without nationality, and therefore had not established statutory jurisdiction pursuant to § 70502(d)(1)(C), because the vessel was *not* actually stateless, and because the Coast Guard had information that would have enabled it to easily confirm the registry, but it failed to do so in bad faith. *Id.* at 1299. The panel rejected this claim, reasoning that statutory jurisdiction under § 70502(d)(1)(C) does not depend on actual statelessness, but rather on the foreign government's response. *Id.* at 1299.

Critically, the *Lopez Hernandez* "defendants did not make the argument asserted [in *Davila-Reyes*]," and before this Court, "that "§ 70502(d)(1)(C) is *unconstitutional* because Congress acted beyond its authority under the Felonies Clause in defining a vessel without nationality to include a vessel whose master makes a verbal claim of nationality that is not affirmatively and unequivocally confirmed by the identified country." *Davila-Reyes*, 2022 WL 178854, at *27 n.53 (emphasis added). In other words, the defendants never argued, and the panel never considered, whether Congress's authority to "define and punish . . . Felonies on the high seas" is constrained by customary international law because the Felonies Clause itself, "*by original design*, requires Congress to adhere to the jurisdictional limits of international law with respect to determining statelessness." *Id.* at *14 (emphasis added).  But the court was not "confronted with the question we face today—... and so, of course, [it] had no occasion to resolve it." *United States v. Edwards*, 997 F.3d 1115, 1120 (11th Cir. 2021).

The panel in *Lopez Hernandez* rejected the defendants' argument that the prosecution violated international law, reasoning that, statutorily, any such violation fell to the executive branch and was not a

14

basis to undo a criminal conviction. *Id.* at 1297. To be clear, the defendants are not making this argument (that international law itself constrains Congress's authority to enact statutes). Rather, they argue— as the First Circuit held—that Congress's authority to "define and punish . . . Felonies on the high seas" is constrained by customary international law because "the Felonies Clause of the Constitution, by original design, requires Congress to adhere to the jurisdictional limits of international law with respect to determining statelessness." *Davila-Reyes*, 2022 WL 178854, at *14. In other words, § 70502(d)(1)(C) is not unconstitutional because it violates international law, it is unconstitutional because it violates *the Felonies Clause*, which "requires Congress to abide by international law principles in defining statelessness." *Id.* at *22. That issue was never before the *Lopez Hernandez* court and, as a result, *Lopez Hernandez* is inapposite.

Simply put, the constitutional issue present here and in *Davila-Reyes* was plainly not before the Eleventh Circuit in *Lopez Hernandez* and, as a result, the panel did not address it. As the Eleventh Circuit has "explained time and again: '[A] decision can hold nothing beyond the facts of that case.'" *United States v. Birge*, 830 F.3d 1229, 1232 (11th Cir. 2016)

(citation omitted). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004), as quoted in *Edwards*, 304 F.3d at 1112 (further citation omitted). *See also Gann v. United States*, 142 S. Ct. 1 (Oct. 4, 2021) (Sotomayor, J., dissenting from the denial of certiorari) (citing *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (for the proposition that "where an issue was neither 'raised in briefs or argument nor discussed in the opinion of the [c]ourt,' there is no 'binding precedent on th[e] point'"); *United States v. Booker*, 543 U.S. 220, 239-241 (2005) (rejecting the government's argument that "four recent cases" precluded the application of *Blakey v. Washington,* 542 U.S. 296 (2004), to the Sentencing Guidelines, because none of those cases had presented the constitutional claim at issue therein).

In the absence of relevant Eleventh Circuit precedent, this Court should follow the persuasive, thorough, and well-reasoned holding of the First Circuit in *Davila-Reyes* and dismiss the indictment here.

## II.    The United States' authority pursuant to the MDLEA is limited to offenses occurring on the high Seas; because this offense took place within the Exclusive Economic Zone of Colombia, it did not occur on the "high Seas," and the indictment must be dismissed.

As discussed above, Congress' authority to enact the MDLEA (46 U.S.C. § 70501 *et seq.*) emanates solely from its Article I, Section 8, Clause 10 power to "define and punish Piracies and Felonies committed on the high Seas." *Bellaizac-Hurtado*, 700 F.3d at 1258; *Davila-Mendoza*, 972 F.3d 1264. Accordingly, Congress's power to act under this Clause is limited to offenses "committed on the high Seas." *See Bellaizac-Hurtado*, 700 F.3d at 1258 (holding that "Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama."). Because this offense did not occur on the "high Seas," the allegations in the indictment fall outside of Congress's enumerated powers, and this Court lacks jurisdiction to adjudicate the offense. Stated differently, the MDLEA is unconstitutional as applied to the defendants' alleged conduct.

A. <u>The Felonies Clause is "textually limited to conduct on the high seas."</u>

As discussed above, Article 1, Section 8, Clause 10 grants Congress the authority to "define and punish Piracies and Felonies committed *on the high Seas*, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10 (emphasis added). Plainly, that power is "textually limited to conduct *on the high seas*." *Bellaizac-Hurtado*, 700 F.3d at 1248. (citing U.S. Const., art. I, § 8, cl. 10).

For a "district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in [the MDLEA], the Government must preliminarily show that the conspiracy's vessel was, *when apprehended*, subject to the jurisdiction of the United States." *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016) (emphasis added) (quoting *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008) (citation omitted).

Thus, the question is whether the waters located with Colombia's Exclusive Economic Zone are part of the high Seas within the meaning of Article I, Section 8, Clause 10. They are not.

B. <u>The Exclusive Economic Zone is not the "high Seas."</u>

The Exclusive Economic Zone, or EEZ, was recognized in the 1982 United Nations Convention on the Law of the Seas (UNCLOS), 1833 U.N.T.S. 397 (attached as Exhibit 2). "Under customary international law as reflected in Article 55 of the 1982 [UNCLOS], and with respect to other nations, exclusive economic zone means the waters seaward of and adjacent to the territorial sea, not extending beyond 200 nautical miles from the territorial sea baseline, as recognized by the United States." 33 C.F.R. § 2.30(b). Article 55 of UNCLOS states that the "exclusive economic zone is an area beyond and adjacent to the territorial sea, subject to the specific legal regime established by this Part, under which the rights and jurisdiction of the coastal State and the rights and freedoms of other States are governed by the relevant provisions of this Convention." Under the UNCLOS, coastal states have sovereign rights regarding the conservation, management, and exploitation of natural resources within their EEZ. Article 58 provides that all states may enjoy the freedoms of navigation and overflight, as well as other "internationally lawful uses of the sea" within the EEZ.

In sum, the EEZ is neither territorial waters nor the high seas. It is something distinct, with features of both. Most significant for present purposes, however, is that "under customary international law," the EEZ is *not* the high seas.

> Under customary international law as reflected in the 1982 United Nations Convention on the Law of the Sea and without prejudice to high seas freedoms that may be exercised within exclusive economic zones pursuant to article 58 of the United Nations Convention on the Law of the Sea, and unless the context clearly requires otherwise . . . the high seas means waters that are not the exclusive economic zone (as defined in § 2.30), territorial sea (as defined in § 2.22), or internal waters of the United States or any other nation.

33 C.F.R. § 2.32(d) (emphasis added). While other definitions may be found,[4] it is this definition of high seas—the one provided by customary international law—that is relevant and authoritative here.

As discussed in Issue I, above, Congress' authority under the Felonies Clause is inherently limited by customary international law. Thus, just as Congress may not rely on the Felonies Clause to exert jurisdiction over vessels that are not truly "stateless," under

---

[4] A different provision of the C.F.R. defines the "high seas" to include the EEZ for certain specific purposes. *See* 33 C.F.R. § 2.32(c). But for the reasons explained *infra*, this definition has no bearing on the meaning of Article I.

international law, nor may it expand the definition of the "high seas" beyond that provided by customary international law.

An examination of this issue reveals that the First Circuit's historical analysis in *Davila-Reyes*, is fully consistent with the most relevant precedent of the Eleventh Circuit interpreting the Define and Punish Clause. In *Bellaizac-Hurtado*, the Eleventh Circuit recognized that the Define and Punish Clause includes three distinct powers: "the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations." 700 F.3d at 1248 (citation omitted). In analyzing Congress's power to define and punish offenses against the law of nations, the Eleventh Circuit explained that the "text, history, and structure of the Constitution confirm that the power to 'define' is limited by the law of nations." *Id.* at 1249.

In other words, Congress's power to "define" means that it has the authority "to codify and explain offenses that had already been understood as offenses against the law of nations" *not* "the power to create or declare offenses against the law of nations." *Id.* at 1249–50; *see also id.* at 1249 (explaining that, "during the Founding period" the "word

21

'define' meant [t]o give the definition; to explain a thing by its qualities and to circumscribe; to mark limits."). This clause "does not grant Congress the authority to punish conduct that is not a violation of the laws of nations." *Id.* at 1249. "The insertion of the power to 'define' enabled Congress to provide notice to the people through codification; it did not enable Congress to create offenses that were not recognized by the law of nations." *Id.* at 1250.

The same reasoning and limitations apply to Congress's power to "define" felonies on the high seas. The power to "define and punish" in each phrase (to define and punish piracy, to define and punish felonies on the high seas, and to define and punish offenses committed against the laws of nations) is the same—and emanates from the singular use of the terms in the text. Thus, it does not give Congress the authority to recast the boundaries of the "high Seas" in order to expand its own sphere of authority. Instead, the "high Seas" referenced in Article I must be construed according to the definition of the high seas accorded by customary international law.

This understanding is confirmed by our constitutional structure. As the Eleventh Circuit has noted, if "Congress could define any conduct as

'piracy' or as a 'felony' or as an 'offense against the law of nations,' its power would be limitless and contrary to our constitutional structure." *Id.* Similarly here, the locus of the high Seas provides a substantive limit on Congress's authority to "define" felonies under Clause 10. If Congress were permitted to redefine the "high Seas" as it so chose, it could greatly expand the authority given to it by the Framers, in contravention of the very notion of enumerated powers. *See id.* For these reasons, this Court, too, should "look to international law to ascertain the scope" of the High Seas under Clause 10. *See id.; cf. id.* at 1260 (Barkett, J., specially concurring).

In summary, Congress's authority to punish felonies on the high seas is limited to the "high Seas" as that term is defined by customary international law. And that definition, as discussed above, *excludes* the EEZ. Because the defendants were arrested within the EEZ of Colombia, and not on the high seas, the United States lacks jurisdiction over his offense. Put differently, because their offense falls outside of Congress's limited Article I powers, this Court is without subject matter jurisdiction over their offense, and the indictment must be dismissed.

III.  **The indictment should be dismissed as a sanction for the government's violations of Federal Rules of Criminal Procedure 5(a) and (b), and outrageous government conduct, in detaining the defendants for approximately 13 days without judicial oversight.**

Finally, the defendants move this Court to dismiss their indictments based on the government's outrageous conduct in holding them for 11 days without charges being filed and without being brought before a magistrate.

A.  The government violated Rule 5(a) by failing to bring the defendants before a magistrate judge "without unnecessary delay."

Federal Rule of Criminal Procedure 5(a)(1)(B) states: "A person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." This requirement stems from common law, which "obliged an arresting officer to bring his prisoner before a magistrate as soon as he reasonably could." *Corley v. United States*, 566 U.S. 303, 306 (2009) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 6162 (1991) (Scalia, J., dissenting). This presentment requirement—"which was the law in nearly every American State and the National

24

Government"—"tended to prevent secret detention and served to inform a suspect of the charges against him[.]" *Id.* (citations omitted).

The Supreme Court has held that confessions obtained during unreasonable or unnecessary delays in presentment must be suppressed. *See United States v. Corley*, 129 S. Ct. 1558, 1571 (2009); *Mallory v. United States*, 354 U.S. 449, 455 (1957); *McNabb v. United States*, 318 U.S. 332, 345 (1943). The delays in these cases are mere hours. The delay in the defendants' case was 11 days. Under the circumstances, and following the reasoning of the Supreme Court and the text of Rule 5(a), this delay is far beyond what could be considered reasonable or necessary.

B. <u>The government violated Rule 5(b) by failing to secure a criminal complaint until at least 13 days after the defendants' arrest.</u>

Similarly, the government disregarded the requirements of Federal Rules of Criminal Procedure 5(b), which states: "If a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed."[5] This requirement stems from the Fourth

---

[5] Because this alleged offense was committed outside the United States, the statute provides for venue in any district. *See* 46 U.S.C. § 70504(b)(2) ("Venue.--A person violating section 70503 or 70508-- (1) shall be tried in the district in which such

Amendment's protection against unreasonable seizures and is generally held to require a judicial determination of probable cause within 48 hours of arrest. *See Gernstein v. Pugh* 420 U.S. 103 (1975). Any detention beyond that period without a judicial determination of probable cause is permissible only in the case of "a bona fide emergency or other extraordinary circumstance." *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). Even a delay of less than 48 hours will be impermissible if it is unreasonable. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside,* 500 U.S. at 56. The defendants were detained for 11 days before any charges were filed. The record fails to reveal any legitimate reason for such a lengthy delay. Absent "a bona fide emergency or other extraordinary circumstances," such a lengthy delay cannot be considered anything but patently unreasonable. As a result, the defendants' rights under Rule 5 and the Due Process Clause of the Fifth Amendment were violated.

---

offense was committed; or (2) if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district, may be tried in any district.").

C. <u>Dismissal is the appropriate sanction.</u>

The government's actions in this case demonstrate a blatant disregard for the law and warrant dismissal—whether as a sanction for the Rule 5 violations, the unreasonable delay in presentment, or under the "outrageous" government conduct doctrine.

In 1973, Justice Rehnquist observed that the Court "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction...." *United States v. Russell*, 411 U.S. 423, 431–32 (1973). Such a situation might arise where the government's conduct violates "'fundamental fairness,'" or is "'shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *See id*. (citation omitted).

Arresting foreign nationals at sea and subjecting them to prolonged detention without access to the courts surely meets this standard. *See* Seth Freed Wessler, *The Coast Guard's 'Floating Guantanamos,'* N.Y. Times Magazine, Nov. 11, 2020  at 6 ("Maritime- and human-rights-law scholars caution that the delayed periods of detention employed by the

United States in its antidrug campaign run counter to international human rights norms.") (attached as Exhibit 3).

Furthermore, detainees are routinely kept in abhorrent conditions. *See id.* (describing how detainees are not told where they are going, not given lawyers, and are not permitted to contact their consulates or family members; are forced to wear "papery" jumpsuits, cuffed at the ankles and chained to a cable running across the ground; given rubber mats instead of beds, forced to defecate into a bucket, and subsist on insufficient food.).

The defendants were arrested and held captive by the United States government without access to any of the protections of the American judicial system for 11 days. The government's conduct in this case, and as part of a pattern of callous disregard for the rights of the accused, is outrageous and requires that the indictment be dismissed.

## CONCLUSION

WHEREFORE, for the above reasons, the defendants move this Court to dismiss the indictment. They further request an evidentiary hearing.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: *s/R. D'Arsey Houlihan*
    **R. D'Arsey Houlihan**
    Supervisory Assistant Federal Public Defender
    Florida Bar No. 100536
    150 W. Flagler Street, Suite 1700
    Miami, Florida 33130-1556
    (305) 530-7000
    (305) 536-4559, Fax
    E-Mail:  d'arsey_houlihan@fd.org

    **Ana M. Davide, Esq.**
    Attorney for Geraldo Rodriguez
    420 South Dixie Highway, Suite 4b
    Coral Gables, FL 33146
    305-854-6100
    Fax: 305-854-6197
    Email: ana@anadavidelaw.com

    **Victor Edward Rocha, Esq.**
    Attorney for Luis Alfonso Nunez
    990 Biscayne Blvd, Suite O-903
    Miami, FL 33132
    305-774-9111
    Fax: 305-514-0987
    Email: vicrocha@comcast.net

## CERTIFICATE OF SERVICE

I HEREBY certify that on **April 20, 2022**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ R. D'Arsey Houlihan*